IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN McDOWELL<br><br>    **Plaintiff**<br><br>v.<br><br>RAYMOND LITZ; JAMES WYNDER, Jr.; MICHAEL KLOPOTOSKI; and C.J. McKEOWN<br><br>    **Defendants** | CIVIL NO.1:CV-08-1453 |

# **M E M O R A N D U M**

This is a *pro se* civil rights case brought by Plaintiff John McDowell, an inmate confined to the State Correctional Institution at Dallas ("SCI-Dallas"). McDowell alleges that Defendants violated his rights guaranteed by the First, Eighth and Fourteenth Amendments to the United States Constitution. Before the court is Defendants' motion for summary judgment. (Doc. 74.) The parties have briefed the issues, and the motion is ripe for disposition. For the reasons that follow, the court will grant Defendants' motion.

## I.     Background

###     A.     Facts

The following facts are undisputed, unless noted. During all relevant times, Plaintiff was incarcerated at SCI-Dallas. All visitors to SCI-Dallas are processed in an area containing both a metal detector and the ION Scan 400b[1]

---

[1] The parties do not provide any detail about the ION Scan 400b. Defendants merely state that it is a machine that scans for the presence of narcotics. (Defs.' Statement of Mat. Facts, Doc. 75 ¶
(continued...)

("ION scanner"), a machine that scans for the presence of narcotics. (Defs.' Statement of Mat. Facts, Doc. 75 ¶¶ 3, 6.) Each visitor must clear both machines before they are permitted a contact visit with an inmate. Defendant Raymond Litz states in his affidavit that, when operating the ION scanner, he asks "all women, regardless of age or ethnicity, to extend their arms out in from of them in order to avoid the possibility of accidental inappropriate touching. . . ." (*Id.* ¶ 5.) Plaintiff offers no evidence contradicting this assertion.[2] If the test returns a negative result, the visitor is allowed to proceed with the visit. (*Id.* ¶ 6.) If the test returns a positive result for narcotics, the visitor is given an opportunity to wash his or her hands to try again. A visitor who does not pass the ION scan after two attempts will either be denied visitation or be required to have a non-contact visit. (*Id.*) As a corrections officer, Litz does not have the authority to decide whether a visitor who has tested

---

[1](...continued)
3.) Plaintiff does not appear to dispute that this is the purpose of the machine.

[2] In response to Defendants' statement of material facts, which are supported by affidavits and other admissible evidence, Plaintiff offers no evidence to support his various denials. (*See* Doc. 79.) While Plaintiff does attach an affidavit to his counter statement of material facts, the affidavit contains inadmissible hearsay. In particular, Plaintiff relies on information that his wife, Roxanne Neal, told him about her observations of, and encounters with, Defendant Litz. (*See id.* at 5-6.) This information will not be considered by the court in ruling on Defendants' motion for summary judgment. Federal Rule of Civil Procedure 56(e)(1) states that a court may consider affidavits supporting or opposing summary judgment that are "made on personal knowledge, [and which] set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Plaintiff was not present to observe the events described by his wife. Accordingly, the information that he relays about what happened to her on each of the occasions that she was denied visitation, or had the visitation restricted to a non-contact visit, is not based on his personal knowledge and comes solely from information provided by his wife. Thus, this information is inadmissible because it is hearsay and because it is not based on Plaintiff's personal knowledge. *See Blackburn v. United Parcel Servs.,* 179 F.3d 81, 95 (3d Cir. 1999) ("[A] hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion."). Plaintiff could have submitted an affidavit from his wife and had this information considered but he did not do so. Accordingly, the court will not consider any part of Plaintiff's affidavit that does not comply with the requirements of Federal Rule of Civil Procedure 56(e).

positive on the ION scanner has a non-contact visit or whether a visit is denied; that decision is made by a shift commander. (*Id.* ¶ 7.) Similarly, Litz does not have the authority or the capability to alter any of the ION scanner settings; these settings are password protected and Litz does not know the password. (*Id.* ¶ 8.)

Plaintiff and his wife Roxanne Neal are practicing Muslims. Ms. Neal wears traditional Islamic garb that covers her entire head and body. According to Plaintiff, Ms. Neal had visited him at SCI-Dallas without problems from 1997 through April 26, 2007. However, on April 26, 2007, Ms. Neal was denied visitation because she refused to allow Defendant Litz to scan her arms with the ION scanner.[3] (*Id.* ¶¶ 3, 9.) That same day, Plaintiff filed grievance # 186092, in which he complained that his wife was denied a visit "because the drug scanner machine supposedly detected drugs on her hands, " and further stated that the ION scanner was too sensitive. (Defs.' Ex. K, Grievance # 186092, Doc. 76-12 at 2.) Nowhere in his grievance or his subsequent appeals did Plaintiff complain of harassment by Defendant Litz or any other Defendant. (*See id.* at 2-8.) Plaintiff exhausted this grievance on August 14, 2007, when the grievance was denied by the Chief Grievance Officer. (*Id.* at 8.) Plaintiff has not exhausted any other grievance to final review. (Defs.' Statement of Mat. Facts, Doc. 75 ¶ 12.)

On June 30, 2007, Ms. Neal caused the metal detector to alert when she attempted to enter SCI-Dallas. (*Id.* ¶ 14.) Prior to her entry, corrections officer Eric Noss observed several people helping Ms. Neal put her arm in a sling. (*See* Defs.'

---

[3]Plaintiff asserts in his affidavit that his wife informed him "that Officer Litz, in conducting the swab search went down the shoulder of her Islamic garb, her breast, and her buttocks unlike the women Caucasian visitor [sic] were subjected to the swab search. [sic]" (Doc. 79 at 5.) Because this information is hearsay, and is not based on Plaintiff's personal knowledge, the court will not consider it for the reasons stated in footnote 2, above.

3

Ex. G, Employee Report of Incident dated June 30, 2007, Doc. 76-8 at 2; Defs.' Ex. B, Declr. of Diane Yale, Records Supervisor, Doc. 76-3 ¶ 5 (attesting that Ex. G contains true and correct copies of employee incident reports detailing the June 30, 2007 incident with Ms. Neal).) After the metal detector alerted, Noss used the hand-held metal detector, which alerted at Ms. Neal's arm. Because Ms. Neal was wearing her traditional Islamic garb covering her entire body, Noss requested that a female corrections officer search the sling. (Defs.' Ex. G, Employee Report of Incident, Doc. 76-8 at 2.) Lynn Stegman took Ms. Neal into the restroom and performed a pat down search. (*Id.* at 3.) She helped Ms. Neal remove the sling and searched it, as well as a sock that was on Ms. Neal's hand. (*Id.*) Corrections officer Stegman also asked Ms. Neal to remove her head scarf because she noticed something underneath it, which turned out only to be one of Ms. Neal's braids. (*Id.*) Stegman found nothing during this search, and Ms. Neal passed through the ION scanner without incident, and was permitted to visit Plaintiff. Ms. Neal visited Plaintiff for 4.5 hours that day. (Defs.' Ex. J, Visit History, Doc. 76-11.)

On October 1, 2007, Defendant Litz was monitoring the inmate phone system, which he does on a regular basis as a part of his duties as SCI-Dallas, when he noticed that a phone call initiated using the Inmate Personal Identification Number ("IPIN") of another inmate was being used by Plaintiff. (Defs.' Statement of Mat. Facts, Doc. 75 ¶¶ 15, 16.) Since the loaning of an IPIN is not permitted, Litz filed a Misconduct Report, charging Plaintiff with, among other things, unauthorized use of the mail or telephone. (Defs.' Ex. H., Misconduct Report # A571937, Doc. 76-9 at 2.) A misconduct hearing was held on October 3, 2007, and presided over by Defendant C.J. McKeown. At the hearing, Plaintiff pled guilty to

4

the charge of unauthorized use of the mail or telephone, and was sentenced to thirty days loss of telephone privileges. (*Id.* at 3.) In his affidavit, Plaintiff states that at this hearing his due process rights were violated, but provides no explanation of how Defendant McKeown or any of the other Defendants violated his due process rights.

On March 17, 2008, Litz was again monitoring inmate telephone calls, including a call made by Plaintiff to his wife Ms. Neal. During that call, Ms. Neal made a second phone call to a third party and acted as an intermediary between Plaintiff and the third party. (Defs. Statement of Mat. Facts, Doc. 75 ¶ 22.) Since a three-way conversation is not permitted, Litz filed a Misconduct Report charging Plaintiff with unauthorized use of the mail or telephone. (Defs.' Ex. I., Misconduct Report # A447142, Doc. 76-10 at 2.) A hearing was held before Defendant McKeown on March 19, 2009. (*Id.* at 3.) After hearing Plaintiff's version of events, Defendant McKeown stated that he found Litz to be more credible and found Plaintiff guilty of unauthorized use of the mail or telephone, and sentenced him to ninety days loss of telephone privileges and removal from his job. (*Id.*)

Plaintiff appealed McKeown's decision. Specifically he asserted that he was denied due process because he had requested that a tape of the conversation be played but that McKeown refused to listen to the tape and based his decision solely on the statements of Litz. (*Id.* at 4.) He also asserted in his appeal that he believed that the misconduct report was filed by Litz in retaliation for the complaints that he made about Litz following the April 2007 incident involving the ION scanner. McKeown's decision was upheld by the Program Review Committee on March 27, 2008. (*Id.* at 5.) Plaintiff appealed the Program Review Committee's

decision to Defendant Michael Klopotoski, the superintendent at SCI-Dallas. On April 4, 2008, Klopotoski upheld the decision of the Program Review Committee. (*Id.* at 8.) Plaintiff then appealed the decision to the Office of the Chief Hearing Examiner. That appeal was denied on April 24, 2008. (*Id.* at 11.)

While these appeals were pending, on April 17, 2008, Ms. Neal came to visit Plaintiff. She failed the ION scan, but was permitted to have a non-contact visit with Plaintiff. (Defs.' Statement of Mat. Facts, Doc. 75 ¶ 26.) That visit lasted almost 2.5 hours. (Defs.' Ex. J, Visit History, Doc. 76-11.) On May 31, 2008, Ms. Neal arrived for another visit. Because inmates are only allowed one visit per week, Litz checked the computer to be sure that Plaintiff had not already had a visit that week. When it was determined that Plaintiff had not exhausted his visits for the week, Ms. Neal was allowed to visit and entered the facility without incident. That visit lasted nearly 6 hours. (*Id.*)

On June 7, 2008, Ms. Neal again visited Plaintiff. During the ION scan, Ms. Neal was asked to extend her arms so that Litz could scan them. (Defs.' Statement of Mat. Facts, Doc. 75 ¶ 29.) Ms. Neal complied and was allowed to visit Plaintiff. That visit lasted over 4 hours. (Defs.' Ex. J, Visit History, Doc. 76-11.) Between April 26, 2007, and the filing of the complaint in this case on August 4, 2008, Ms. Neal visited Plaintiff no less than thirty-nine times. (*Id.*)

### B. Procedural History

Plaintiff filed his complaint on August 4, 2008. (Doc. 1.) After waiving service of the complaint, Defendants filed a motion to dismiss on October 7, 2008. (Doc. 14.) Despite receiving two extensions of time, Defendants failed to file

a brief in support of their motion to dismiss. Instead, on November 21, 2008, Defendants filed an Answer. (Doc. 22.)

On January 30, 2009, the court issued a case management order requiring all discovery to be completed by March 31, 2009. (Doc. 34.) In March 2009, Plaintiff filed two motions to compel discovery, (Docs. 38 & 42), which were denied, without prejudice, by the court in an order dated April 1, 2009, (Doc. 46). The basis for the court's denial was Defendants' counsel's assertion that they needed an additional sixty days to complete discovery and produce Plaintiff's requested discovery. By order dated that same day, the court extended the discovery deadline until May 29, 2009. (Doc. 47.) Defendants requested, and the court granted, an additional extension of the deadline until August 7, 2009. (Doc. 50.)

On June 1, 2009, Plaintiff filed another motion to compel discovery. (Doc. 51.) After briefing, on July 10, 2009, the court issued a memorandum and order denying Plaintiff's motion to compel discovery, finding that "Defendants have complied, in a good faith effort, . . . [and] they have made documents available for inspection which are not privileged, irrelevant, overbroad or objectionable on any other basis." (Jul. 10, 2009 Mem. & Order, Doc. 55 at 12.) On that same day, the court granted Defendants' motion to take Plaintiff's deposition. (Doc. 56.)

After several delays and extensions of time, on December 9, 2009, Defendants filed a motion for summary judgment, supporting brief, supporting exhibits, and statement of material facts. (Docs. 74-77.) On December 28, 2009, Plaintiff filed his brief in opposition and counter-statement of material facts to Defendants' motion. (Docs. 78-79.) Defendants filed their reply brief on January 11,

2010. (Doc. 80.) With leave of court, Plaintiff filed a sur-reply on February 5, 2010. (Doc. 84.) The motion is ripe for disposition.

**II.        Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Upon such a showing, the burden then shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*

8

*Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.** **Discussion**

In his complaint, Plaintiff asserts that Defendant Raymond Litz violated his First Amendment rights by retaliating against him after Plaintiff complained about Litz' treatment of Plaintiff's wife during the April 26, 2007 visits to SCI-Dallas. Specifically, Plaintiff alleges that Litz singled out his wife for a strip search, tampered with the ION scanner in order to prevent her from visiting Plaintiff, and falsified two misconduct reports. Plaintiff also alleges that Defendants James Wynder, Jr., Michael Klopotoski, and C.J. McKeown violated his Fourteenth Amendment due process rights by imposing and sustaining a disciplinary hearing against him, and by refusing to overturn the hearing on appeal. Finally, Plaintiff asserts that Defendants Wynder and Klopotoski violated his Eighth Amendment rights through their deliberate indifference to the known harassment of his wife as well as Litz' alleged retaliation. The court will address each of these in turn.

### A. First Amendment claims

"A prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered "adverse action" at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Carter v. McGrady* 292 F.3d 152, 157-58 (3d Cir. 2002) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (adopting *Mount Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977))). Once a prisoner has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that it "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Rauser*, 241 F.3d at 334 (incorporating *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

"In crafting the appropriate standard of review for prisoners' constitutional claims, the [Supreme] Court observed that '[r]unning a prison is an inordinately difficult undertaking.'" *Carter*, 292 F. 3d at 158 (quoting *Turner*, 482 U.S. at 85). Moreover, the Court noted that "'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.'" *Turner*, 482 U.S. at 85 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). Thus, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Plaintiff asserts a First Amendment claim against Defendant Litz only. (*See* Compl., Doc. 1 at Count 1, ¶ 21; *see also,* Defs.' Ex. D, John McDowell Dep.,

Doc. 76-5 at 16:9-22.) For his part, Litz concedes that Plaintiff has met the first prong of the test—constitutionally protected activity—by the filing of a grievance on April 26, 2007. (*See* Defs.' Br. in Supp. of Mot. for Summ. J., Doc. 77 at 10.) Litz argues, however, that none of the subsequent incidents constitutes adverse action that was substantially motivated by Plaintiff's protected activity. Plaintiff cites three examples of retaliatory action taken by Litz: the June 30, 2007 sling search; his actions during three visits by Ms. Neal in 2008; and his filing two misconduct reports against Plaintiff. The court will address each of these.

### 1. Sling search

As for the June 30, 2007 sling search, the record is clear that Litz had nothing to do with requiring the search. The employee incident reports filed that day make it clear that corrections officer Noss, who was working the metal detector, observed several people assisting Ms. Neal in adjusting her sling. (Defs.' Ex. G, Employee Report of Incident, Doc. 76-8 at 2.) When Ms. Neal went through the metal detector it alerted for the presence of metal, and a subsequent wand scan alerted that there was metal in or around the area of Ms. Neal's sling. (*Id.*) Officer Noss called for Officer Lynn Stegman, a female corrections officer, so that she could search the sling. (*Id.*) Officer Stegman took Ms. Neal into the bathroom to search her sling and the sock that was covering Ms. Neal's hand. (*Id.* at 3.) She also looked under Ms. Neal's veil because she noticed some bulging. (*Id.*) When it turned out that there was nothing wrong, Ms. Neal was permitted to visit Plaintiff. In fact, the records show that she visited Plaintiff for almost 4.5 hours that day. (Defs.' Ex. J, Visit History, Doc. 76-11.) All of these records were corroborated as genuine

11

through an affidavit submitted by Defendants' records custodian.  (*See* Defs.' Ex. B, Declr. of Diane Yale Aff., Doc. 76-3 ¶ 5.)

Plaintiff asserts in this complaint that upon arriving at SCI-Dallas on June 30, 2007, Ms. Neal was told by Litz that she would have to step aside so that she could be strip searched for drugs.  (*See* Compl., Doc. 1 ¶ 4.)  Plaintiff says nothing about this search in his affidavit.  To the extent that Plaintiff relies on the statement made in his complaint he faces multiple problems.  First, the statement is hearsay because Plaintiff did not observe these interactions first hand, and he submits no affidavit from his wife stating her version of the events that took place on June 30, 2007.  Second, in opposing summary judgment, a party may not simply sit back and rest on the allegations in its complaint; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).  Thus, the only evidence before the court is that which was presented by Defendants through their records, and given that Plaintiff provided nothing in response, these records are undisputed.

None of the undisputed facts concerning the June 30, 2007 search of Ms. Neal rises to a level sufficient to constitute adverse action by Litz.  First, there is nothing to indicate that Litz ordered the search or had anything to do with it; the record is clear that the search was conducted by officer Stegman and ordered by officer Noss.  Second, even assuming that the search of Ms. Neal's sling, and the sock that was on her hand, were somehow attributable to Litz, they do not constitute adverse action.  A prisoner-plaintiff satisfies the adverse action requirement by

demonstrating that the action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). On the day in question, Plaintiff was permitted to visit with his wife for 4.5 hours. The fact that Ms. Neal was subjected to extra-scrutiny because she set off the metal detector upon entering the prison is not adverse action; in fact, it seems incredibly prudent even in hindsight.

### 2. **Visits**

The same analysis applies to the alleged retaliation that occurred during Ms. Neal's visits on April 17, 2008, May 31, 2008, and June 7, 2008. Plaintiff alleges that Ms. Neal was forced to have a non-contact visit on April 17, 2008. He alleges that Litz attempted to prevent Ms. Neal from visiting on May 31, 2008, by checking the computer to see if Plaintiff had exceeded his permitted weekly visits; and finally, he alleges that Litz made his wife put her arms in front of her so that he could run the ION scanner over them, something that he did not require of Caucasian women.

None of these events rises to the level of adverse action. In all three instances, Ms. Neal was permitted to visit Plaintiff for an extended period of time. (*See* Defs.' Ex. J, Visit History, Doc. 76-11.) With the exception of a non-contact visit on April 17, 2008, because Ms. Neal failed the ION scan twice, all of these visits were without restriction. Regarding the non-contact visit on April 17, 2008, the record is clear that Litz did not have the discretion to decide whether Ms. Neal's visit would be contact or non-contact; that decision was made by the shift commander. (*See* Raymond Litz Aff.. Doc. 76-2, ¶ 12.) Regarding the May 31, 2008 visit, if Litz believed that Plaintiff had already reached his visitation limits for the

week it seems perfectly appropriate for Litz to have checked the computer to determine this before allowing Ms. Neal to enter. Finally, regarding Plaintiff's allegation that Ms. Neal was subjected to greater scrutiny with the ION scanner than Caucasian women, Plaintiff comes forward with no evidence to support this assertion. He makes this allegation in his complaint, but provides no proof. In contrast, Litz averred in his affidavit that he "ask[s] all women, regardless of age or ethnicity, to extend their arms out in front of them . . . ." (*Id.* ¶ 7.)

There is simply no evidence before the court that allows the conclusion that any of these instances constitutes adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. This is particularly true in light of the fact that these visits occurred over a year after Plaintiff filed his April 26, 2007 grievance. Plaintiff would have the court find that Litz harbored a grudge against Plaintiff for this period of time because of a grievance that was filed, and ultimately denied, and that he took this grudge out on Plaintiff's wife a year later by subjecting her to greater scrutiny upon entering the prison. The lack of temporal proximity alone makes this theory highly implausible. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (stating that suggestive timing is relevant to causation in retaliation cases); *Pressley v. Johnson*, 2007 WL 2907271, at *9 (W.D. Pa. Sept. 28, 2007) (finding that an alleged incident that occurred over a year after Defendants knew of the protected activity did not support a retaliation claim).

### 3. Misconduct Reports

As for the two misconduct reports filed by Litz against Plaintiff, the record demonstrates that Plaintiff admitted to the underlying facts in each case. First,

Plaintiff pled guilty to Misconduct # A 571937, and apparently admitted during the hearing that he had used the telephone when the call was initiated using someone else's IPIN. (*See* Disciplinary Hr'g Report, Doc. 76-9 at 3.) Similarly, although Plaintiff did not plead guilty to Misconduct # A 447142, he admitted at the hearing that his wife made a call to a third party while she was on the telephone with him. (*See* Disciplinary Hr'g Report, Doc. 76-10 at 3.) The hearing officer found Litz' report to be more credible than Plaintiff's version of events and determined Plaintiff's mere participation in this call, whether it was initiated by him or not, was sufficient to sustain a guilty verdict. (*Id.*) Plaintiff appealed this matter as far as he could and the guilty verdict was sustained at each step. (*See id.* at 3-11.)

Assuming without deciding that the filing of disciplinary action reports constitutes adverse action sufficient to sustain the second prong of the retaliation test, *see Carter v. McGrady* 292 F.3d 152, 157-58 (3d Cir. 2002) (stating test), the court finds that reporting violations that actually occurred, and which are sustained through the disciplinary process, does not constitute retaliation as there is no causal link between the protected conduct and the reports. Other than speculation, Plaintiff has come forward with nothing corroborating his claim. There is no temporal proximity between the events giving rise to the alleged retaliation—the April 2007 grievance filed by Plaintiff—and the alleged retaliatory disciplinary action—October 2007 and March 2008—that would permit a reasonable fact finder to infer a causal relationship.

Thus, when it comes to his claim of retaliation for exercising his First Amendment rights, Plaintiff has come forward with insufficient evidence to support a

prima facie case. As such, the court concludes that Defendant Litz is entitled to summary judgment on Count I of Plaintiff's complaint.[4]

### B. Fourteenth Amendment claims

In addition to his First Amendment claims, Plaintiff asserts that Defendants C.J. McKeown, James Wynder, and Michael Klopotoski violated his due process rights by the "impos[ing] and sustaining of a Disciplinary Hearing proceeding," and, in the case of Defendant Klopotoski, that his rights were violated when Klopotoski "refus[ed] to overturn the Plaintiff's [D]isciplinary Hearing Findings . . . ." (Compl., Doc. 1 at Count III ¶ 23, Count IV ¶ 24.)

It is well established that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Hewitt v. Helms*, 459 U.S 460, 468 (1983). In the context of an incarcerated Plaintiff, due process is implicated only where the conditions of confinement impose "atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The court finds that Plaintiff has failed to demonstrate that any of the conditions imposed by the two disciplinary hearings were either atypical or posed a significant hardship.

The penalties imposed as a result of the first disciplinary action was a loss of telephone privileges for thirty days. (*See* Disciplinary Hr'g Report, Doc. 76-9 at 3.) The penalty imposed by the hearing officer for the second disciplinary action

---

[4] Because the court finds that Plaintiff's First Amendment claims fails on the merits, the court need not address the procedural question of whether Plaintiff has exhausted his administrative remedies.

16

was removal of Plaintiff from his job and ninety days loss of telephone privileges. (*See* Disciplinary Hr'g Report, Doc. 76-10 at 3.) Neither of these sanctions amounts to a loss of a protected liberty interest or an atypical or significant hardship. *See Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002) ("[T]he Due Process Clause applies only if the restraints at issue exceed the prisoner's sentence "in such an unexpected manner as to give rise to protection by the Due Process Clause of [their] own force. . . .' " (citing *Sandin*, 515 U.S. at 484)). The fact that Plaintiff disagrees with the result of the hearings does not amount to a denial of due process, and the court finds that Plaintiff has failed to meet his burden of producing evidence that could lead a reasonable fact finder to conclude that his due process rights were violated. Accordingly, the court will grant Defendants' motion for summary judgment as to Counts III and IV of his complaint.

### C. Eighth Amendment claim

In Count II of his complaint, Plaintiff asserts a claim of "Deliberate Indifference," which the court interprets as Plaintiff's assertion of a claim under the Eighth Amendment. The exact nature of Plaintiff's claim is unclear. He states only that Defendants Wynder and Klopotoski "failed to curb the known religious intimidation, racial intimidation and overall pattern and harassment and abuse of Plaintiff as well as his wife. . . ." (Compl., Doc. 1 at Count II, ¶ 22.) Plaintiff points to no facts supporting his claim, and points to no consequences that occurred as a result of Defendants' alleged indifference.

The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement. The Constitution, however, "does not mandate comfortable prisons,"

*Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and prison officials must merely ensure that inmates receive adequate food, clothing, shelter, and medical care, plus must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984))  To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation.' " *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *Rhodes*, 452 U.S. at 346).  The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm. *See Farmer*, 511 U.S. at 835; *Wilson*, 501 U.S. at 303.

Loss of privileges, in general, does not amount to infliction of cruel and unusual punishment; and loss of visitation telephone and recreation privileges is no exception to this rule. *See Overton v. Bazzetta*, 539 U.S. 126 (2003) (noting that there is no constitutional right to visits for inmates and clarifying that "[t]he very object of imprisonment is confinement.  Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner.  An inmate does not retain rights inconsistent with proper incarceration.  Freedom of association is among the rights least compatible with incarceration.  Some curtailment of that freedom must be expected in the prison context"); *see also Torrealba v. Hogsten*, 2009 WL 3242293, at * 8, (M.D. Pa. Oct. 8, 2009) (finding that loss of visitation and telephone

18

privileges does not meet the objective prong of an Eighth Amendment claims and collecting cases supporting this proposition). Since the privileges at issue do not qualify as the minimal necessities of life, such as adequate food, clothing, shelter, sanitation, medical care and personal safety, Plaintiff's Eighth Amendment claims fail as a matter of law, and the court will grant Defendants' motion for summary judgment on Count II of Plaintiff's complaint.

**IV.** **Conclusion**

In accordance with the foregoing discussion, the court finds that there exist no genuine issues of material fact, and that Plaintiff has failed to come forward with sufficient evidence supporting any of his claims. Accordingly, the court will grant Defendants' motion for summary judgment. An appropriate order will issue.

s/Sylvia H. Rambo<br>United States District Judge

Dated: May 5, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN McDOWELL

    **Plaintiff**

    v.

RAYMOND LITZ; JAMES WYNDER, Jr.; MICHAEL KLOPOTOSKI; and C.J. McKEOWN

    **Defendants**

CIVIL NO.1:CV-08-1453

# **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) Defendants' motion for summary judgment, (Doc. 74), is **GRANTED;** and

2) The clerk of court shall enter judgment for Defendants and against Plaintiff, and shall close the case.

                                          s/Sylvia H. Rambo
                                          United States District Judge

Dated: May 5, 2010.